0010563750

3179/0207 25 001 Page 1 of 8
2001-06-27 13:44:44
Cook County Recorder 35.50

Prepared by:

HOME LOAN MORTGAGE CORPORATION
11776 MARIPOSA ROAD, STE 103
HESPERIA, CA 92345
(760) 848-2500

When Recorded Mail To

HOME LOAN MORTGAGE CORPORATION

11776 MARIPOSA ROAD, SUITE 103
HESPERIA, CA 92345

LOAN NO.:
ESCROW NO.:

State of Illinois  GIT  MORTGAGE

FHA Case No.

THIS MORTGAGE ("Security Instrument") is given on JUNE 14, 2001
The Mortgagor is
SANDRA RICHMOND  married to Anthony Williams

("Borrower"). This Security Instrument is given to
HOME LOAN MORTGAGE CORPORATION, A CALIFORNIA CORPORATION

which is organized and existing under the laws of CALIFORNIA , and
whose address is
11776 MARIPOSA ROAD, SUITE 103, HESPERIA, CA 92345

("Lender"). Borrower owes Lender the principal sum of
NINETY FOUR THOUSAND FORTY ONE AND NO/100 X X X X X X X X X X X X X X X X X X X X X

Dollars (U.S. $ 94,041.00 ).

This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on
JULY 01, 2031 . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance

FHA Illinois Mortgage - 04/96
VMP-4R(IL) (9804)

FIRSTAR

Page 1 of 8

Initials:
FORM FHA-IL
LENDER SUPPORT SYSTEMS INC. FHA-IL.FHA 109/98)

LOAN #

10563750

of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to the Lender the following described property located in COOK County, Illinois:

LOT 15 IN J. E. MERRION'S SECOND NOB HILL ADDITION TO COUNTRY CLUB HILLS, A RESUBDIVISION OF CERTAIN LOTS AND VACATED STREETS IN J. E. MERRION'S COUNTRY CLUB HILLS SIXTH ADDITION AND OF LOT "B" IN J. E. MERRION'S NOB HILL ADDITION TO COUNTRY CLUB HILLS, ALL IN THE WEST 3/4 OF THE NORTHWEST 1/4 OF SECTION 26, TOWNSHIP 36 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Parcel ID #: ▮▮▮▮▮▮▮
which has the address of 16929 GLEN OAKS DRIVE , COUNTRY CLUB HILLS                    [Street, City],
Illinois                             60478                [Zip Code]  ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

Initials: _[signature]_

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or

Initials: _[signature]_

abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

    **6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

    **7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

    If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

    Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

    Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

    **8. Fees.** Lender may collect fees and charges authorized by the Secretary.

    **9. Grounds for Acceleration of Debt.**

        (a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

            (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

            (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

        (b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

Initials: _/s/_

FORM FHA-IL

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

Initials: 
FORM FHA-IL

10563750

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20. **Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

21. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider            ☐ Graduated Payment Rider     ☐ Adjustable Rate Rider
☐ Planned Unit Development Rider   ☐ Growing Equity Rider        ☐ Rehabilitation Loan Rider
☐ Other [Specify]

FORM FHA-IL

10563750

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____   _____ (Seal)
                                     SANDRA RICHMOND                -Borrower

_____   _____ (Seal)
                                                                    -Borrower

_____ (Seal)   _____ (Seal)
                          -Borrower   ANTHONY WILLIAMS SIGNING SOLEY     -Borrower
                                      FOR THE PURPOSE OF WAIVING HOMESTEAD
                                      RIGHTS

_____ (Seal)   _____ (Seal)
                          -Borrower                                   -Borrower

_____ (Seal)   _____ (Seal)
                          -Borrower                                   -Borrower

**STATE OF ILLINOIS,**     COOK                                    **County ss:**

I, Linda M. Perazzolo , a Notary Public in and for said county and state do hereby certify that

SANDRA RICHMOND     and Anthony Williams her husband and wife

, personally known to me to be the same person(s) whose name(s) subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that they signed and delivered the said instrument as their free and voluntary act, for the uses and purposes therein set forth.

Given under my hand and official seal, this 14th day of June 2001

My Commission Expires:

_____
Notary Public

"OFFICIAL SEAL"
LINDA M. PERAZZOLO
Notary Public, State of Illinois
My Commission Expires...

Page 8 of 8                                                         FORM FHA-IL

# NOTE

Multistate

LOAN NO: ▮▮▮▮
FHA Case No. ▮▮▮▮

JUNE 14, 2001
[Date]

16929 GLEN OAKS DRIVE, COUNTRY CLUB HILLS, IL 60478

[Property Address]

## 1. PARTIES
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means HOME LOAN MORTGAGE CORPORATION, A CALIFORNIA CORPORATION

and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST
In return for a loan received from Lender, Borrower promises to pay the principal sum of
NINETY FOUR THOUSAND FORTY ONE AND NO/100 X X X X X X X X X X X X X X X X X X X X X X X

Dollars (U.S. $ 94,041.00 ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of SEVEN AND SEVEN EIGHTHS percent ( 7.875 %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT
(A) Time
Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on AUGUST, 2001 . Any principal and interest remaining on the first day of JULY, 2031 will be due on that date, which is called the "Maturity Date."

(B) Place
Payment shall be made at
HOME LOAN MORTGAGE CORPORATION 11776 MARIPOSA ROAD, SUITE 103, HESPERIA, CA 92345
or at such place as Lender may designate in writing by notice to Borrower.

(C) Amount
Each monthly payment of principal and interest will be in the amount of U.S. $ 681.86 . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

(D) Allonge to this Note for payment adjustments
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge  ☐ Growing Equity Allonge  ☐ Other [specify]

## 5. BORROWER'S RIGHT TO PREPAY
Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

Initials: ▮▮▮

FHA MULTISTATE FIXED RATE NOTE - (10/95)
VMP-1R (9601)

FORM FHA-NOTE 10/98

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR percent ( 4.000 %) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)       _____ (Seal)
SANDRA RICHMOND          -Borrower                            -Borrower

_____ (Seal)       _____ (Seal)
                         -Borrower                            -Borrower

_____ (Seal)       _____ (Seal)
                         -Borrower                            -Borrower

_____ (Seal)       _____ (Seal)
                         -Borrower                            -Borrower

PAY TO THE ORDER                     Page 2 of 2                FORM FHA-NOTE 10/98

FIRSTAR BANK, N.A.                   PAY TO THE ORDER OF
WITHOUT RECOURSE                     WITHOUT RECOURSE  [VOID]
HOME LOAN MORTGAGE CORPORATION       FIRSTAR BANK, N.A.
A CALIFORNIA CORPORATION
                                     BY _Teresa Bulver_
BY _____                         TERESA BULVER
Manager                              ASSISTANT VICE-PRESIDENT
Doris Crosby

PAY TO THE ORDER OF
WITHOUT RECOURSE
U.S. BANK N.A. F/K/A
FIRSTAR BANK, N.A.
_Teresa Bulver_
TERESA BULVER
VICE PRESIDENT



RECORDING REQUESTED
AND PREPARED BY:
U.S. Bank Home Mortgage
809 S. 60th Street, Suite 210
West Allis, WI 53214
(866) 787-9167
MARY J IRWIN

And When Recorded Mail To:
U.S. Bank Home Mortgage
809 S. 60th Street, Suite 210
West Allis, WI 53214
ATTN: MARY J IRWIN JD

Doc#: 1310622033 Fee: $40.00
RHSP Fee:$10.00 Affidavit Fee:
Karen A.Yarbrough
Cook County Recorder of Deeds
Date: 04/16/2013 09:48 AM Pg: 1 of 2

_____ Space above for Recorder's use _____

MERS MIN#
Customer#   Service#
Loan#

## ASSIGNMENT OF MORTGAGE

For good and valuable consideration, the sufficiency of which is hereby acknowledged, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., C/O P.O. BOX 2026, FLINT, MI 48501 2026, by these presents does convey, grant, bargain, sell, assign, transfer and set over to: U.S. BANK NATIONAL ASSOCIATION, 4801 FREDERICA STREET, OWENSBORO, KY 42301 0000, the described Mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon. Said Mortgage for $94,041.00 is recorded in the State of ILLINOIS, County of COOK Official Records, dated JUNE 14, 2001 and recorded on JUNE 27, 2001, as Instrument No. 0010563750, in Book No. ---, at Page No. ---.
Original Mortgagor: SANDRA RICHMOND MARRIED TO ANTHONY WILLIAMS. Original Mortgagee: HOME LOAN MORTGAGE CORPORATION, A CALIFORNIA CORPORATION. Legal Description: LOT 15 IN J.E. MERRION'S SECOND NOB HILL ADDITION TO COUNTRY CLUB HILLS, A RESUBDIVISION OF CERTAIN LOTS AND VACATED STREETS IN J.E. MERRION'S COUNTRY CLUB HILLS SIXTH ADDITION AND OF LOT "B" IN J.E. MERRION'S NOB HILL ADDITION TO COUNTRY CLUB HILLS, ALL IN THE WEST 3/4 OF THE NORTHWEST 1/4 OF SECTION 26, TOWNSHIP 36 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS..
Property Address: 16929 GLEN OAKS DR, COUNTRY CLUB HILLS, IL 60478-0000. PIN#
Date: MARCH 29, 2013
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By: _____
Kim Kintop, Assistant Secretary

Loan#: ▇▇▇  Srv#: ▇▇▇
Page 2

| | | |
|---|---|---|
| State of | **WISCONSIN** | } |
| County of | **MILWAUKEE** | } ss. |

On MARCH 29, 2013, before me, Dorothy Mae Hawley, a Notary Public, personally appeared **Kim Kintop**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of WISCONSIN that the foregoing paragraph is true and correct.
Witness my hand and official seal.

_(signature)_
(Notary Name): Dorothy Mae Hawley
Commission Expires: 08/28/2016
Commission No: ▇▇▇

[Notary Seal: NOTARY PUBLIC — DOROTHY MAE HAWLEY — STATE OF WISCONSIN]

01 19 PM Pg 1 of 7
Cook County Recorder of Deeds
*RHSP $9.00 RPRF $1.00 FEES Applied

This Document Prepared By:
CRISTIN MILLAY
U.S. BANK N.A.
OWENSBORO, KY 42301
(800) 365-7772

When Recorded Mail To:
FIRST AMERICAN TITLE
ATTN: LMTS
P.O. BOX 27670
SANTA ANA, CA 92799-7670

Tax/Parcel No. ▮

_____ [Space Above This Line for Recording Data] _____

Original Principal Amount: $94,041.00              FHA\VA Case No ▮
Unpaid Principal Amount: $89,939.82               Loan No: ▮
New Principal Amount $96,918.07
New Money (Cap): $6,978.25

# LOAN MODIFICATION AGREEMENT (MORTGAGE)

This Loan Modification Agreement ("Agreement"), made this 25TH day of OCTOBER, 2014, between SANDRA RICHMOND MARRIED TO ANTHONY WILLIAMS ("Borrower"), whose address is 16929 GLEN OAKS DRIVE, COUNTRY CLUB HILLS, ILLINOIS 60478 and U.S. BANK N.A. ("Lender"), whose address is 4801 FREDERICA ST, OWENSBORO, KY 42301 amends and supplements (1) the Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated JUNE 14, 2001 and recorded on JUNE 27, 2001 in INSTRUMENT NO. 0010563750, COOK COUNTY, ILLINOIS, and (2) the Note, in the original principal amount of U.S. $94,041.00, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property," located at
16929 GLEN OAKS DRIVE, COUNTRY CLUB HILLS, ILLINOIS 60478

Page 1

the real property described is located in COOK COUNTY, ILLINOIS and being set forth as follows:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:

SEE ATTACHED EXHIBIT "B" FOR MORTGAGE SCHEDULE

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of, **OCTOBER 1, 2014** the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$96,918.07**, consisting of the amount(s) loaned to Borrower by Lender, plus capitalized interest in the amount of U.S. **$6,978.25** and other amounts capitalized, which is limited to escrows and any legal fees and related foreclosure costs that may have been accrued for work completed.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **4.3750%**, from **OCTOBER 1, 2014**. The Borrower promises to make monthly payments of principal and interest of U.S. **$483.90**, beginning on the **1ST** day of **NOVEMBER, 2014**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. If on **OCTOBER 1, 2044** (the "Maturity Date"), the Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in the Borrower is sold or transferred and the Borrower is not a natural person) without the Lender's prior written consent, the Lender may require immediate payment in full of all sums secured by this Security Instrument.

   If the Lender exercises this option, the Lender shall give the Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If the Borrower fails to pay these sums prior to the expiration of this period, the Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on the Borrower.

4. The Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever cancelled, null and void, as of the date specified in Paragraph No. 1 above:
   (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and
   (b) all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5. If the Borrower has, since inception of this loan but prior to this Agreement, received a discharge in a Chapter 7 bankruptcy, and there having been no valid reaffirmation of the underlying debt, by entering into this Agreement, the Lender is not attempting to re-establish any personal liability for the underlying debt.

6. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

7. Borrower agrees to make and execute other documents or papers as may be necessary to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

In Witness Whereof, the Lender have executed this Agreement.

U.S. BANK N.A.

By JENNIFER MATTINGLY     (print name)     11-4-2014
Mortgage Document Officer     (title)     Date

_____ [Space Below This Line for Acknowledgments] _____

LENDER ACKNOWLEDGMENT

STATE OF KENTUCKY

COUNTY OF DAVIESS

The foregoing instrument was acknowledged before me this _11-4-2014_ by JENNIFER MATTINGLY, the MORTGAGE DOCUMENT OFFICER of U.S. BANK N.A., a _National Banking Assoc_, on behalf of said national association.

_Jackie Gentry_
Notary Public

Printed Name: _Jackie Gentry_
My commission expires: _6-5-2018_

OFFICIAL SEAL
JACKIE GENTRY
NOTARY PUBLIC - KENTUCKY
STATE-AT-LARGE
My Comm. Expires 06-05-2018

Page 4

In Witness Whereof, I have executed this Agreement.

_Sandra Richmond_ (Seal)
Borrower
SANDRA RICHMOND
10-29-2014
Date

_Anthony Williams_ (Seal)
Borrower
ANTHONY WILLIAMS
10.29.2014
Date

_____ (Seal)
Borrower

_____ (Seal)
Borrower

_____
Date

_____
Date

_____ (Seal)
Borrower

_____ (Seal)
Borrower

_____
Date

_____
Date

[Space Below This Line for Acknowledgments]

**BORROWER ACKNOWLEDGMENT**
State of ILLINOIS

County of __Cook__

This instrument was acknowledged before me on __October 29, 2014__ (date) by

**SANDRA RICHMOND, ANTHONY WILLIAMS** (name/s of person/s acknowledged).

_Alison James_
Notary Public
(Seal)
Printed Name: __ALISON JAMES__

My Commission expires:
__1/10/16__

OFFICIAL SEAL
ALISON JAMES
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:01/10/16

EXHIBIT A

BORROWER(S): SANDRA RICHMOND MARRIED TO ANTHONY WILLIAMS

LOAN NUMBER: ▮

LEGAL DESCRIPTION:

LOT 15 IN J.E. MERRION'S SECOND NOB HILL ADDITION TO COUNTRY CLUB HILLS, A RESUBDIVISION OF CERTAIN LOTS AND VACATED STREETS IN J.E. MERRION'S COUNTRY CLUB HILLS SIXTH ADDITION AND OF LOT B IN J.E. MERRION'S NOB HILL ADDITION TO COUNTRY CLUB HILLS, ALL IN THE WEST 3/4 OF THE NORTHWEST 1/4 OF SECTION 26, TOWNSHIP 36 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.SUBJECT TO COVENANTS, CONDITIONS, RESTRICTIONS AND EASEMENTS, OF RECORD, IF ANY;

ALSO KNOWN AS: 16929 GLEN OAKS DRIVE, COUNTRY CLUB HILLS, ILLINOIS 60478

## EXHIBIT B
## MORTGAGE SCHEDULE

Mortgage made by SANDRA RICHMOND MARRIED TO ANTHONY WILLIAMS to HOME LOAN MORTGAGE CORPORATION for $94,041.00 and interest, dated JUNE 14, 2001 and recorded on JUNE 27, 2001 in INSTRUMENT NO ▮▮▮▮ Mortgage tax paid: $

This mortgage was assigned from HOME LOAN MORTGAGE CORPORATION (assignor), to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FIRSTAR BANK, N.A. (assignee), by assignment of mortgage dated and recorded on SEPTEMBER 20, 2001 in INSTRUMENT NO ▮▮▮▮

This mortgage was assigned from HOME LOAN MORTGAGE CORPORATION (assignor), to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FIRSTAR BANK, N.A. (assignee), by assignment of mortgage dated and recorded on MAY 20, 2002 in INSTRUMENT NO ▮▮▮▮

This mortgage was assigned from MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (assignor), to U.S. BANK NATIONAL ASSOCIATION (assignee), by assignment of mortgage dated and recorded on APRIL 16, 2013 in INSTRUMENT NO ▮▮▮▮

Page 7